STATE OF MARYLAND *v.* ROBERT E. REICHMAN

[App. No. 80, September Term, 1972.]

*Decided January 9, 1973.*

Before MOYLAN, GILBERT and SCANLAN, JJ.

*Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Darrel L. Longest, Assistant State's Attorney for Montgomery County,* for applicant.

*William Blanton McDonald* for respondent.

MOYLAN, J., delivered the opinion of the Court.

Robert E. Reichman was convicted on February 26, 1968, of robbery, in the Circuit Court for Prince George's County, and sentenced to three years imprisonment dating from August 7, 1967. On December 12, 1968, he was adjudged a defective delinquent by a jury and committed to Patuxent Institution for an indeterminate period of confinement without either maximum or minimum limits. On December 11, 1970, a petition was filed in the Circuit Court for Montgomery County (the bona fide residence of Reichman when he was originally sentenced) by his attorney, in his behalf, requesting a redetermination hearing before a jury. At a hearing on March 22-23,

1971 (Judge Ralph G. Shure, presiding), a jury found Reichman still to be a defective delinquent. Even before the order recommitting him to Patuxent was signed on May 18, 1971, he sought leave to appeal that redetermination.

On September 20, 1971, Judge Shure sent a memorandum to the attorney appointed to represent Reichman in his application for leave to appeal stating that he understood that Reichman had served the entire three-year sentence imposed in the Circuit Court for Prince George's County on the robbery conviction and that Reichman had continued to contact him concerning his incarceration in Patuxent. He suggested to the attorney that. an additional ·evaluation be made of the inmate by a psychiatrist of his own choice, and he concluded, ". . . after which I will be glad to arrange for an additional hearing as to whether he should not now be removed from Patuxent."

On October 22, 1971, Reichman's attorney filed a "Petition to Remand without Prejudice" in the Court of Special Appeals advising the Court of the "unsolicited communication" from Judge Shure and asking that an order be passed "remanding the captioned case to the lower Court for further action, without prejudice to Appellant's right to resubmit the said case to this Court for consideration of his Application for Leave to Appeal." The petition was denied. On December 2, 1971, the application for leave to appeal was withdrawn.

Pursuant to Judge Shure's suggestion, Reichman was examined by Dr. Harold Kaufman, a psychiatrist practicing in the District of Columbia. Dr. Kaufman had previously evaluated Reichman, and a copy of his report based on that evaluation dated February 22, 1971, in which he expressed the opinion that Reichman was no longer a danger to society, was admitted into evidence by the defense at the redetermination hearing held on March 22-23, 1971. Dr. Kaufman, in a report dated June 9, 1972, addressed to the inmate's attorney, again reiterated that it was his professional opinion that Reichman no longer met the definition of a defective delinquent.

Following the receipt of Dr. Kaufman's report, Judge Shure scheduled a further hearing into the matter. The hearing was held on August 9, 1972. The State asserts that it did not know the purpose of the hearing until that very morning and that it had no knowledge of the existence of Dr. Kaufman's report until then. The State further asserts that at a conference in Judge Shure's chambers, off the record, before the hearing, it first learned of the court's intention to release the inmate from Patuxent on the basis of Dr. Kaufman's report. At the hearing, the State moved to dismiss the proceedings contending that the hearing was not within the framework of Article 31B, Section 10 (b), which provides that a petition for redetermination cannot be filed less than three years following the prior seeking of a petition for review. It contended, therefore, that the court lacked jurisdiction to hear the matter.

In anticipation of the court's denial of the motion to dismiss and of the admission of Dr. Kaufman's report over the State's objection, the State requested a short continuance to enable it to elicit expert evidence from Patuxent on the inmate's status. In support of its motion, it proffered a report from Patuxent which indicated that as of June 20, 1972, the authorities there felt that it was too soon to assess whether Reichman had made any actual therapeutic progress. The report was admitted into evidence as State's Exhibit 1. At the same time, Dr. Kaufman's report was admitted into evidence as Defendant's Exhibit 1.

The court answered the State's jurisdictional objection, implicitly denied its request for a continuance, and proceeded to grant relief to Reichman:

"... We are here pursuant to my order and in answer to the State's suggestion, Article 31 (b), it is this section that provides right be given to the defendant to insist upon a hearing after certain time has elapsed.

"This redetermination is not at the instance

of the defendant but at the instance of the Court, not by virtue of any right given a defendant by statute but by virtue of the Court's interest in this case.

"This man's term has now expired. He was confined August 7, 1967 for a period of three years. This is August 9, 1972. I have followed this case, and I did take an interest in this man and in view of recent Supreme Court statements on this question, but more particularly because of my belief that this man is no longer a defective delinquent I think he should now be released and the Court will sign an order releasing him from Patuxent at this time.

"I think that this man has so improved and his debt to society has now been paid, that he should be released, and I will sign such an order."

Pursuant to Article 31B, Section 11, the State, expressing its intention to file an application for leave to appeal, moved that the order be stayed. The motion was denied, and an order was signed on the same day releasing Robert E. Reichman from Patuxent Institution. The State timely filed an application for leave to appeal from that order.

In *Austin v. Director*, 245 Md. 206, the Court of Appeals held that when a court of general jurisdiction proceeds to hear a defective delinquency matter under Article 31B, it sits as a court of special jurisdiction. As such, its power is limited to that expressly provided in the statute. In *Austin*, following a jury's determination that the defendant there was not a defective delinquent, the hearing judge granted the State's motion for a new trial. The Court of Appeals reversed the order holding that since no provision for a new trial existed in the statute, the court was without jurisdiction to grant the motion. In *Bullock v. State*, 230 Md. 280, the Court there held that since no right of removal was provided by Ar-

ticle 31B, no such right existed. In *State v. Blakney,* 8 Md. App. 232, the lower court placed an inmate on "work-out, live-in status." This Court, in reversing the order, held that the decision to place an inmate on "work-out, live-in status" was expressly reserved by the Legislature in Section 13 to the Institutional Board of Review as part of the treatment program at Patuxent. Where the Board not only made no recommendation that the inmate be released unconditionally but expressed its objection to any leave of absence, the court lacked authority to enter such an order. See also *Shields v. Director,* 11 Md. App. 347.

The power of the lower court here was thus only as broad as the statute authorized. Article 31B provides that a defective delinquent may have his status redetermined at certain fixed times. Section 10. It further provides that the court may take certain action following the recommendation of the Institutional Board of Review that an inmate be unconditionally released. Section 13 (f). The statute nowhere provides, however, that the court may *sua sponte* order a hearing into the issue of defective delinquency simply because the original sentence of an inmate has expired or because of the judge's "belief that this man is no longer a defective delinquent." The court here made clear that it was acting "not at the instance of the defendant but at the instance of the Court, not by virtue of any right given a defendant by statute but by virtue of the Court's interest in this case"—it attempted to exercise a power it did not have. See generally *State v. McCray,* 267 Md. 111.

Nor has any Supreme Court case authorized the lower court's action. *McNeil v. Director,* 407 U. S. 245, 32 L.Ed.2d 719, 92 S. Ct. 2083, is simply inapposite. The only element of similarity between the two inmates is the fact that the sentence imposed on each on the underlying criminal conviction precipitating commitment to Patuxent had expired. McNeil, however, having refused to submit to the evaluation process at Patuxent, was still there solely by virtue of an *ex parte* judicial order. He

587

had not had the issue of defective delinquency judicially determined by a judge or jury. Reichman, on the other hand, had been recommitted to Patuxent by court order for an indeterminate period of confinement without either maximum or minimum limits following a redetermination hearing before a jury.

Reichman argues that the hearing below was actually in the nature of a *habeas corpus* proceeding "sponsored by the court." The short answer to his contention is that although *habeas corpus* may be employed under Section 10 (c) to effect release from Patuxent on certain grounds, it is not a forum in which the issue of defective delinquency may be determined on the merits. *Sas v. Maryland,* 334 F. 2d 506 (4th Cir. 1964).

Therefore, the action of the lower court here, in scheduling the hearing *sua sponte* and proceeding to redetermine the inmate's status, being absolutely devoid of any legal sanction, the court was without jurisdiction to enter the order of August 9, 1972, releasing Robert E. Reichman from Patuxent Institution.

> *Application for leave to appeal granted; order of August 9, 1972, releasing Robert E. Reichman from Patuxent Institution vacated.*